**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER WILSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:08CV1013MLM** |
| | ) | |
| **STEVE LARKINS,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

This matter is before the court on the Petitioner for Writ of Habeas Corpus filed by Petitioner

Christopher Wilson ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a

Response to Order to Show Cause and an Amended Response to Order to Show Cause with Exhibits.

Docs. 17, 20. Petitioner filed a Traverse.[1] Doc. 18. Also before the court are two letters written by

Petitioner in which he asserts that prison officials are threatening and retaliating against him and in

which he seeks relief in this regard. Docs. 31, 32. The parties have consented to the jurisdiction of

the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 9.

**II.**
**BACKGROUND AND PROCEDURAL HISTORY**

On April 13, 2004, Petitioner was charged by Amended Information in Lieu of Indictment

with one count of committing violence to a correctional institution officer, a class B felony, for an

---

[1]        Petitioner filed a Traverse in reply to Respondent's Response to Order to Show
Cause. Pursuant to the court's Order, Respondent filed an Amended Response to Order to Show
Cause. Doc. 20. The court informed Petitioner that he had fourteen days from the date Respondent
filed the Amended Response to Order to Show Cause to file a reply. Petitioner twice requested
extensions of time to file a reply to the Amended Response to Order to Show Cause, which requests
the court granted. Doc. 24, Doc. 25. Petitioner has not filed a reply.

incident which took place on December 6, 2001, at the Missouri Eastern Correctional Center. Petitioner was charged as a prior and persistent offender. Resp. Ex. B at 12-14.

The testimony at Petitioner's trial was that on December 6, 2001, Petitioner was an inmate in the Missouri Eastern Correctional Center and was housed in the Administrative Segregation Unit of the prison; that Petitioner was not in protective custody or in any circumstance which might have precluded his having a cellmate; that Correctional Officer Henry Cox informed Petitioner that he was going to have a cellmate assigned to his cell; that Petitioner told Officer Cox that the he was not going to take a "celly" and that Officer Cox should not bring the cellmate down; that Petitioner became argumentative and cursed at Officer Cox; that when Officer Cox returned with the cellmate Petitioner told Officer Cox that he better not put the cellmate inside Petitioner's cell or "I'm going to jump on him"; that Petitioner cursed; that Sergeant Ray Altholz and another officer then entered Petitioner's cell; that upon their entering Petitioner's cell, Petitioner was belligerent and continued to curse; that Petitioner then refused to "cuff up" through the door and cursed at and threatened the officers; that, upon Sergeant Altholz's request, Petitioner refused to "cuff up" inside the cell; that Petitioner then became angrier and said that he would kick Sergeant Altholz; that Sergeant Altholz then sprayed Petitioner with pepper spray to gain his Petitioner's compliance; that Petitioner then hit Sergeant Altholz at least three times; that Sergeant Altholz suffered a bruise to his chest and injuries to his eye and lip; and that Officer Cox subdued Petitioner and in the process applied more pepper spray. Resp. Ex. A, Trial Transcript ("Tr.") at 109-114, 124, 129, 157-72. As stated by the Missouri appellate court, the incident was videotaped.[2] "After the incident, [Petitioner] was taken to a shower

---

[2]    In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen

2

and, thereafter, a second videotape was made." Resp. Ex. J at 2, n.1. As further stated by the

Missouri appellate court:

> At trial Jeff Terschulse, a criminal investigator for the Department of Corrections,
> testified that he received the eight millimeter videotape of the incident as part of his
> investigation. Investigator Terschulse further testified that the prosecutor asked him
> to make a VHS copy of the eight millimeter videotape. While doing so the videotape
> was torn. The videotape was then taken to a camera store to make a VHS copy. A
> portion of the videotape was removed during the process. The VHS copy of the
> incident made by the camera store, Exhibit 1, was admitted without objection.

Resp. Ex. J at 2.

As further stated by the Missouri appellate court, "[a]t trial both videotapes were admitted

and played for the jury. Counsel objected to the admission of the second videotape on the grounds

it was prejudicial because its only purpose was to show that [Petitioner] was 'mean.'" Resp. Ex. E

at 3. The second videotape showed that at the time he was in the shower, Petitioner was "highly

agitated and loud"; that Petitioner "shouted abusive expletives at the female guard"; and that

Petitioner complained of injuries which he said he received during the incident. Resp. Ex. E at 3. The

second videotape was admitted over objection from counsel. The trial court admitted it "to allow the

state, in response to the defense suggestion that the prison employees had violated procedures and

---

v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v.
Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas
petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness
that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir.
1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590
(8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The
presumption applies to basic, primary or historical facts and the inferences that can properly be drawn
regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v.
Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of
witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S.
443, 506 (1953)).

policies, to show that [Petitioner] 'was not brutalized in this incident during or even after as a repercussion.'" Resp. Ex. E at 4.

Petitioner was convicted as charged. The court sentenced him to fifteen years imprisonment to be served consecutive to the sentence he was currently serving. Resp. Ex. B at 34-36.

Petitioner filed a direct appeal. Resp. Ex. C. On June 28, 2005, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. E. On July 20, 2005, the Missouri appellate court issued the mandate in Petitioner's direct appeal. On August 19, 2005, Petitioner filed a pro se post-conviction relief motion. Resp. Ex. F at 4-21. Counsel was appointed and filed an Amended Motion. Resp. Ex. F at 26-62. An evidentiary hearing was held before the motion court. On August 3, 2006, the motion court denied Petitioner post-conviction relief. Resp. Ex. F at 66-76. Petitioner filed an appeal with the Missouri appellate court. Resp. Ex. H. On October 30, 2007, the Missouri appellate court affirmed the decision of the motion court. Resp. Ex. J.

On July 10, 2008, Petitioner filed his § 2254 Petition. Doc. 1. In his § 2254 Petition Petitioner does not state specific grounds for habeas relief. Rather, Petitioner states that he seeks habeas relief on the grounds he raised in his direct appeal brief and in his post-conviction motions and exhibits. Petitioner raised the following issues before the Missouri appellate court [3]:

(1)  The trial court abused its discretion when it allowed the State to play Exhibit 7, a videotape of Petitioner after he was maced;

---

[3]  The court has previously found, as alleged by Respondent, that Petitioner has failed to comply with the specificity requirement of § 2254. See Doc. 19 (citing Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994); Adams v. Armontrout, 897 F.2d 332, 334 (8th Cir. 1990) (holding that a habeas petition must specify the grounds upon which relief is sought). In the interests of justice, however, the court also stated that to the extent Petitioner intends to raise the issues he raised before the Missouri appellate court, the court will address his § 2254 Petition on its merits. Petitioner's Grounds 1-3 are the issues which he raised before the Missouri appellate court.

(2)     The trial court abused its discretion in refusing to submit Petitioner's tendered limiting instruction regarding Petitioner's being an inmate of the Missouri Department of Corrections at the time he committed the alleged crime;

(3)     Petitioner received ineffective assistance of counsel because counsel failed to move to suppress Exhibit 1, a videotape showing the assault of the guards.

### III.
### EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12.

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

The court has previously found that Petitioner has procedurally defaulted all grounds for relief which he did not raise before the Missouri appellate court. Petitioner has not stated cause or prejudice to excuse his procedural default. As such, the court finds that to the extent Petitioner raises issues which he did not raise before the Missouri appellate court, habeas relief should be denied. The court further finds that Petitioner has not procedurally defaulted Grounds 1-3, the issues of which he raised before the Missouri appellate court. Additionally, the court finds that Petitioner's § 2254 Petition is timely filed.

## III.
## STANDARD OF REVIEW

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." <u>Id.</u> at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application"clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state-court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).").

## V.
## DISCUSSION

**Ground 1 - The Trial Court Abused its Discretion When it Allowed the State to Play Exhibit 7, a Videotape of Petitioner After He Was Maced:**

In Ground 1, Petitioner contends that the videotape of him taken after he committed the crime for which he was convicted should not have been admitted into evidence. Upon addressing this issue the Missouri appellate court held:

> [Defendant] asserts that the trial court abused its discretion in admitting, over his objection, the second videotape, because it was inadmissible evidence of uncharged misconduct that did not have a legitimate tendency to establish his guilt of the offense

charged. We review claims challenging the admissibility of evidence for abuse of discretion. State v. Taylor, 132 S.W.3d 21, 26 (Mo. banc 2004).

"The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes." State v. Bernard, 849 S.W.2d 10, 13 (Mo. banc 1993). The rule does not prohibit proof of facts that tend to prove the present crime, such as those that establish motive, intent, the absence of mistake or accident, or a common plan or scheme. Id. Further, the rule does not prohibit proof of misconduct or uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged. State v. Harris, 870 S.W.2d 789, 810 (Mo banc 1994) [other citations omitted]. This evidence is admissible to present a complete and coherent picture of the events that transpired. Flenoid, 838 S.W.2d at 467.

In this case, the videotape began with defendant's competitiveness and animus to a guard and nurse. It continued with his claims that Sgt. Altholz and Officer Cox had injured him. It demonstrated his physical condition after the incident and that he was medically examined after the incident. This tape was interconnected and nearly contemporaneous with the assault on Sgt. Altholz and set the context for that offense. It added to the complete and coherent picture of the assault. Harris, 870 S.W.2d at 810. It was also a continuation of the sequence of events that presented a coherent picture of the crime and defendant's mental status. . . . It showed his claims of injury during the incident and served to rebut those claims. "The fact that there was stronger relevant evidence adduced at trial does not preclude the state from using allegedly weaker evidence." Flenoid, 838 S.W.2d at 468. Because the state must prove guilt beyond a reasonable doubt, it should not be unduly restricted in the manner in which it does so. Id.

Resp. Ex. E at 4-5.

First, the United States Supreme Court held in Estelle v. McGuire that "'federal habeas corpus relief does not lie for errors of state law'" and that "it is not province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. 62, 67-68 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990) and (citing Pulley v. Harris, 465 U.S. 37, 41 (1984)). The Court further held that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam )). Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives

rise to a federal question reviewable in a habeas petition. <u>Scott v. Jones</u>, 915 F.2d 1188, 1190-91 (8th Cir. 1990). Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights." <u>Evans v. Luebbers</u>, 371 F.3d 438, 443 (8th Cir. 2004) (citing <u>Estelle</u>, 502 U.S. at 68); <u>Anderson v. Goeke,</u> 44 F.3d 675, 679 (8th Cir. 1995); <u>Rainer v. Department of Corrections</u>, 914 F.2d 1067, 1072 (8th Cir. 1990). <u>See also</u> <u>Abdi v. Hatch</u>, 450 F.3d 334, 338 (8th Cir. 2006) ("The admission of evidence at a state trial provides a basis for federal habeas relief when the 'evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'") (quoting <u>Turner v. Armontrout</u>, 845 F.2d 165, 169 (8th Cir.1988)); <u>Sweet v. Delo</u>, 125 F.3d 1144, 1157-58 (8th Cir. 1997) (holding that the exclusion of evidence violates due process if "the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the petitioner] of fundamental fairness'") (quoting <u>Logan v. Lockhart</u>, 994 F.2d 1324, 1330 (8th Cir. 1993)); <u>Mercer v. Armontrout</u>, 844 F.2d 582, 587 (8th Cir. 1988) (holding that to justify the grant of habeas corpus, the error must be "so 'gross'... 'conspicuously prejudicial'... or otherwise of such magnitude that it fatally infected the trial and failed to afford [petitioner] the fundamental fairness which is the essence of due process"); <u>Manning-El v. Wyrick</u>, 738 F.2d 321, 322 (8th Cir.1984) (holding that questions concerning admissibility of evidence are matters of state law and are not reviewable in a federal corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process); <u>Logan v. Lockhart</u>, 994 F.2d 1324, 1330 (8th Cir. 1993) ("Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process.").

The Eighth Circuit held in <u>Anderson v. Goeke</u>, 44 F.3d 675, 679 (8th Cir. 1995), in regard to § 2254 review by a federal court:

> [W]e will reverse a state court evidentiary ruling only if the "petitioner ... show[s] that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.' To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different." [<u>Hamilton v. Nix</u>, 809 F.2d 463, 470 (8th Cir. 1987)] (citations omitted). ... Of particular importance is the frequency and pervasiveness of the alleged misconduct in the context of the entire trial, the weight of the evidence supporting guilt, and whether the trial judge gave a cautionary instruction to the jury on how to properly use the testimony elicited. <u>Hamilton</u>, 809 F.2d at 470. Cf. <u>United States v. Jackson</u>, 41 F.3d 1231, 1233 (8th Cir.1994) (detailing this three-part inquiry for claims of prosecutorial misconduct on direct appeal).

The Eighth Circuit has held that "[r]ulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation. '[O]nly the exclusion of critical, reliable and highly probative evidence will violate due process.'" <u>Nebinger v. Ault</u>, 208 F.3d 695, 697 (8th Cir. 2000) (quoting <u>Sweet v. Delo</u>, 125 F.3d 1144, 1158 (8th Cir.1997). "The admission of evidence at a state trial provides a basis for federal habeas relief when the 'evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'" <u>Abdi v. Hatch</u>, 450 F.3d 334, 338 (8th Cir. 2006) (quoting <u>Turner v. Armontrout</u>, 845 F.2d 165, 169 (8th Cir. 1988)).

Additionally, under federal law, "the admission of evidence is a matter of discretion for the trial court, and the trial court's determination that evidence is relevant and that its probative value outweighs the danger of unfair prejudice will not be reversed on appeal unless the trial court has abused that discretion." <u>United States v. Macklin</u>, 104 F.3d 1046, 1048 (8th Cir. 1997) (citing <u>United States v. Delpit</u>, 94 F.3d 1134, 1146 (8th Cir.1996); <u>United States v. Just</u>, 74 F.3d 902, 904 (8th Cir.1996)). Even where admission of evidence is erroneous, such admission does not necessarily fatally infect a trial. <u>See</u> <u>e.g.</u>, <u>Kuntzelman v. Black</u>, 774 F.2d 291, 292 (8th Cir. 1985) (per curiam)

(finding no error of constitutional magnitude in the admission of "particularly gruesome" photographs where the photographs "were at least arguably relevant and probative in showing the identity and condition of the deceased, the location of the wound, and the intent of [the petitioner] in firing the shot that killed [the victim]").

Further, Rule 404(3)(b) of the Federal Rules of Evidence provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The Eighth Circuit "consistently holds that '[e]vidence that is probative of the crime charged and not relevant solely to uncharged crimes is not 'other crimes' evidence.'" United States v. Tran, 122 F.3d 670, 673 (8th Cir. 1997) (quoting United States v. Aranda, 963 F.2d 211, 213-14 (8th Cir.1992) (quoting United States v. Cerone, 830 F.2d 938, 948 (8th Cir.1987)). Whether the probative value of evidence of uncharged crimes outweighs any possible prejudicial effects "is peculiarly within the discretion of the [trial] court and should not be disturbed absent a clear showing of abuse." Id. (citing United States v. Adediran, 26 F.3d 61, 64 (8th Cir.1994)).

In Ground 1 Petitioner challenges the admission of evidence which rarely rises to the level of a federal constitutional violation. See Nebinger, 208 F.3d at 697. Petitioner has not demonstrated that admission of the videotape infringed upon a specific constitutional right or was so prejudicial that its admission amounted to a denial of due process. As stated by the Missouri appellate court, Petitioner's claims of injury during the incident do not rebut the allegation against him that he attacked and injured Sergeant Altholz. See Abdi, 450 F.3d at 338; Nebinger, 208 F.3d at 697. The

court finds, therefore, that the issue raised by Petitioner in Ground 1 is not cognizable pursuant to federal habeas review.

Alternatively, the court will consider Ground 1 pursuant to <u>Williams</u>, 529 U.S. at 412-13. Upon considering Petitioner's argument that the second videotape should not have been admitted into evidence, the Missouri appellate court found, consistent with federal law, that such evidence is properly admitted where it is proof of the charged crime and that the videotape was properly admitted to provide a complete and coherent picture of the events. <u>See</u> Rule 404(3)(b); <u>Macklin</u>, 104 F.3d at 1048. Further, upon reviewing the evidentiary ruling of the trial court, the Missouri appellate court applied an abuse of discretion standard. <u>See</u> <u>Tran</u>, 122 F.3d at 673; <u>Macklin</u>, 104 F.3d at 1048. As such, the court finds, in the alternative, that the Missouri appellate court's decision in regard to the issue of Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the Missouri appellate court reasonably determined the facts in light of the evidence presented. <u>See</u> § 2254(d)(2). The court finds, therefore, that Petitioner's Ground 1 is without merit and that habeas relief on its basis should be denied.

**Ground 2 - The trial court abused its discretion in refusing to submit Petitioner's tendered limiting instruction regarding Petitioner's being an inmate of the Missouri Department of Corrections at the time he committed the alleged crime.**

Upon addressing the issue of Petitioner's Ground 2 the Missouri appellate court held:

[D]efendant claims that the trial court erred in refusing to submit his tendered Instruction A, which would have limited the jury's consideration of his inmate status to the first element of the crime of committing violence to an employee of the department of corrections. Defendant argues that the jurors should not have considered his status as a convicted felon as evidence that he committed violence against the employee.

The decision to submit or refuse to submit a tendered instruction is within the trial court's sound discretion. <u>State v. Edwards</u>, 60 S.W.3d 602, 610 (Mo. App. 2001). We review the trial court's refusal to submit a proposed instruction for abuse of discretion. <u>Id.</u>

At the jury instruction conference, the parties agreed to the submission of the verdict director, Instruction No. 5, based on MAI 302.04. It submitted the following elements:

> First, that on December 6, 2001, in the County of St. Louis, State of Missouri, the defendant was an inmate in the custody of the Department of Corrections, and

> Second, that defendant committed violence against Sgt. Ray Altholtz (sic) by striking him with his fist, and

> Third, that Sgt. Altholtz [sic] was an employee of the Department of Corrections, and

> Fourth, that defendant acted knowingly with respect to the facts and circumstances submitted in this instruction, then you will find defendant guilty of committing violence against an employee of the Department of Corrections.

Defendant then proffered Instruction A, as a modification of MAI-CR3d 310.40:

> Evidence has been introduced that the defendant was an inmate of the Missouri Department of Corrections. This evidence should only be considered in determining whether or not the state has proven the first element in Instruction No. 5. In determining whether the state has proven all other elements beyond a reasonable doubt you may not consider defendant's status as an inmate.

The trial judge refused this proposal ... .

The trial court did not abuse its discretion in refusing Instruction A for several reasons. First, The Notes on Use to MAI-CR 3d 310.40 indicate that it is required only when the defendant introduces evidence of his reputation of a character trait that would be inconsistent with guilt. Defendant did not do so in this case. In the absence of such evidence, an introduction patterned on MAI- CR3d 310.40 was not warranted. [citation omitted].

Resp. Ex. E at 6-7.

Second, the Missouri appellate court further held that MAI-CR3d 310.40 is not a limiting instruction as it "allows the jury to consider a defendant's good character traits along with all other evidence"; that the purported modification fails to follow the format of the MAI instruction; and that,

therefore, the trial court did not err in refusing to give Instruction A. Resp. Ex. E at 7. Third, the Missouri appellate court found that the proposed instruction misstated the law because Petitioner's inmate status was relevant to the first, third, and fourth elements of the crime with which he was charged. The Missouri appellate court concluded that a trial court does not err when refusing to give an instruction which misstates the law. Resp. Ex. E at 7.

The United States Supreme Court holds that instructional error is generally a matter of state law and that it only rises to the level of a constitutional issue where the instruction, by itself, so infected the trial in a manner which resulted in a conviction which violates due process. See Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973); Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional right]") (internal quotation omitted). The Court in Estelle further held that, "[i]t is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. 502 U.S. at 72-73 (citations omitted). Moreover, instructional errors which rise to the level of constitutional violations cannot be the basis for habeas relief if they are harmless. See Seiler v. Thalacker, 101 F.3d 536, 539 (8th Cir.1996).

Also, under federal law a trial court has considerable discretion in formulating jury instructions. See United States v. Richmond, 700 F.2d 1183, 1195 (8th Cir.1983), abrogated on other grounds, United States v. Raether, 82 F.3d 192 (8th Cir. 1996). An appellate court will not reverse a conviction when the jury instructions given to the jury correctly stated the law. See United States v. Paul, 217 F.3d 989, 997 (8th Cir.2000).

First, Petitioner's Ground 2 is premised on an interpretation of State law by the State court. Because Petitioner's proposed instruction did not properly reflect Missouri law, Petitioner cannot establish that his right to due process was violated by the trial court's rejecting his proposed instruction. See Paul, 217 F.3d at 997. As such, Petitioner's Ground 2 is not cognizable pursuant to federal habeas review. See Estelle, 502 U.S. at 72.

The court will, in the alternative, consider Petitioner's Ground 2 pursuant to Williams, 529 U.S. at 412-13. Upon considering the issue of Petitioner's Ground 2, consistent with federal law, the Missouri appellate court considered that it is within a trial court's discretion to refuse to give a tendered instruction and that, in Petitioner's case, the trial court did not abuse its discretion; Missouri law did not warrant the tendered instruction unless the defendant introduced evidence of his character which is inconsistent with guilt, which Petitioner did not do. See Richmond, 700 F.2d at 1195; Paul, 217 F.3d at 997. The court finds, therefore, in the alternative, that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable interpretation of federal law. Additionally, the Missouri appellate court reasonably determined the facts in light of the evidence presented. See § 2254(d)(2). The court finds, therefore, that Petitioner's Ground 2 is without merit and that habeas relief on its basis should be denied.

**Ground 3 - Petitioner Received Ineffective Assistance of Counsel Because Counsel Failed to Move to Suppress Exhibit 1, a Videotape Showing the Assault of the Guards:**

Upon addressing the issue of Petitioner's Ground 3 the Missouri appellate court held as follows:

> For his claim of ineffective assistance of counsel, movant must show that (1) counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would have exercised under similar circumstances, and (2) he was prejudiced by counsel's deficient performance. Anderson v. State, 196 S.W.3d 28, 33 (Mo. ban 2006). If either the performance or prejudice prong is not met then movant's ineffective assistance claim fails. Eddy v. State, 176 S.W.3d 214, 217 (Mo. App. W.D. 2005).

Movant contends that his counsel should have moved to suppress Exhibit 1 based on the decision in <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Movant assets that regardless whether alteration of the eight millimeter videotape was purposeful or unintentional, he never had access to a portion of the videotape that was favorable to his defense and therefore Exhibit 1 should have been suppressed.

Under <u>Brady</u>, due process is violated when the prosecutor suppresses evidence favorable to the defendant that is material to either guilt or punishment. <u>Anderson</u>, 196 S.W.3d at 37 (citation omitted). "In determining if there is a <u>Brady</u> violation, this Court examines whether the prosecutor's failings prejudiced the defense, as "[t]he requirements of <u>Brady</u> are designed to guarantee a fair trial and to prevent wrongful convictions.'"

Resp. Ex. J at 3-4.

The Missouri appellate court then considered Petitioner's testimony at the evidentiary hearing, including "that Exhibit 1 skipped from when Sergeant Altholz and Officer Marler were at his cell door 'to the scene that was happening' inside his cell"; that a maximum of three minutes was missing from the tape; that Petitioner's being requested to step away from the door was not on the tape; and that he was yelling at officers on the tape "[b]ecause [he] was trying to talk to them with some sense." Resp. Ex. J at 4-5. The Missouri appellate court also considered that Petitioner testified at the hearing that prior to the incident he had requested "protective custody" and that officers did not honor his request for protective custody. Resp. Ex. J at 4-5. The Missouri appellate court then held as follows:

After the omitted portion, Exhibit 1 shows movant yelling and cursing at the officers, Sergeant Altholz spraying pepper mace in movant's direction and movant then striking Sergeant Altholz. The actions that movant testified were missing from Exhibit 1, including informing the officers he had requested protective custody, would have not have provided movant with a defense to the charge of committing violence to a Department of Corrections employee. Movant fails to show he was prejudiced by failing to have the missing part of the exhibit. Counsel did not render ineffective assistance by moving to suppress Exhibit 1 based on <u>Brady</u>. [sic]

Movant also contends that if there was not a <u>Brady</u> violation, "the alteration of the videotape was suspect and counsel could have profitably objected." But the United States Supreme Court has held, "that unless a criminal defendant can show bad

faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). The Supreme Court stated that "[t]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." Id., 488 U.S. at 56 n.*, 109 S.Ct. at 336 n.*.

In the present case, the omitted portion of the original eight millimeter videotape was not exculpatory. Moreover, Investigator Terschulse testified that the eight millimeter videotape was torn when he tried to make a VHS copy. Investigator Terschulse also testified that a portion of the original eight millimeter videotape was removed at the camera store when Exhibit 1 was copied from the original videotape. There is no evidence of bad faith and therefore movant's due process rights were not violated.

Movant further contends that counsel rendered ineffective assistance by failing to object to admission of Exhibit 1 because the State failed to lay a proper foundation. Movant asserts that Sergeant Altholz's testimony was insufficient because he did not testify that he viewed the eight millimeter videotape or that he compared it to Exhibit 1. Movant also argues that Exhibit 1 did not accurately reproduce the events because a portion of the tape was removed.

Sergeant Altholz testified that he had viewed Exhibit 1 and it was a fair and accurate depiction of the events that occurred that day. "The party offering the videotape must show that it is an accurate representation of what it purports to show and foundation may be established through the testimony of any witness who is familiar with the subject matter of the tape and competent to testify from personal observation." State v. Powers, 148 S.W.3d 830, 832 (Mo. App. E.D. 2004). Sergeant Altholz's testimony reflects that he was familiar with the subject matter and further that he was competent to testify from personal observation. Accordingly, the State laid a sufficient foundation for admission of the exhibit. Id. Counsel will not be deemed ineffective for failing to make a non-meritorious objection. Storey v. State, 175 S.W.3d 116, 132 (Mo. banc 2005). Movant's point is denied.

Resp. Ex. H at 6-7.

Pursuant to Williams, 529 U.S. at 412-13, the court will consider federal law applicable to Petitioner's Ground 1. First, in regard to allegations of ineffective assistance of counsel, federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d

157, 162 (8th Cir. 1995) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). The "performance" prong of <u>Strickland</u> requires a showing that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u>

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. <u>Id.</u> at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." <u>Id.</u> at 697.

Additionally, the court notes that the Court stated in <u>Strickland</u>, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires

that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

Pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963), the prosecution has an obligation to disclose to a defendant evidence which is "material either to guilt or punishment." Thus, Brady requires the prosecution to disclose exculpatory evidence. "To prove a Brady violation a defendant must show that 'the prosecution suppressed the evidence, the evidence was favorable to the accused, and the evidence was material to the issue of guilt or punishment.'" United States v. Vallie, 284 F.3d 917, 921 (8th Cir. 2002) (citation omitted). Additionally, "[i]n United States v. Bagley, 473 U.S. 667, 682 (1985), the Supreme Court adopted the prejudice test from Strickland for determining when withheld exculpatory evidence is material under Brady." Anderson v. Bowersox, 262 F.3d 839, 842 (8th Cir. 2001). Thus, to establish that evidence was material, a petitioner must show that "there is a reasonable probability that the result of the trial would have been different if it had been disclosed." United States v. Willis, 277 F.3d 1026, 1034 (8th Cir. 2002). See also Anderson, 262 F.3d at 842.

The Missouri appellate court considered that the two-part test of Strickland was applicable to Petitioner's claim of ineffective assistance of counsel and that, therefore, he had to establish both that counsel was ineffective and that he was prejudiced. In regard to the prejudice component, the Missouri appellate court found that the missing portion of the tape would not have provided Petitioner with a defense to the charge of committing violence against a DOC employee and that, therefore, Petitioner was not prejudiced by admission of the videotape. Further, in the Missouri

appellate court specifically considered the requirements of <u>Brady</u>, including that the defendant establish prejudice. Upon finding that Petitioner's constitutional rights were not violated based on the allegations of Ground 3, the Missouri appellate court considered Petitioner's testimony at the evidentiary hearing, as well as the evidence at trial, and found that Petitioner was not prejudiced, as required for a <u>Brady</u> violation. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law. <u>See</u> <u>Brady</u>, 373 U.S. at 87; <u>Willis</u>, 277 F.3d at 1034; <u>Anderson</u>, 262 F.3d at 842. Additionally, the Missouri appellate court reasonably determined the facts in light of the evidence presented. <u>See</u> § 2254(d)(2). The court finds, therefore, that Petitioner's Ground 3 is without merit and that habeas relief on its basis should be denied.

## V.
## PETITIONER'S LETTERS

In two letters to the court Petitioner alleges that prison officials have threatened and retaliated against him and seeks relief in this regard. To the extent Petitioner seeks to challenge conditions of his confinement, Petitioner is advised that he must set forth such claim in a separate cause of action pursuant to 42 U.S.C. § 1983. As such, the relief which Petitioner seeks in his letters will be denied.

## VI.
## CONCLUSION

For the reasons more fully set forth above, the court finds that Petitioner's Grounds 1 and 2 are not cognizable pursuant to federal law; that Ground 3 and, alternatively, Grounds 1 and 2 are without merit; and that, therefore, Petitioner's § 2254 Petition should be denied. Further, the court finds that the relief requested by Petitioner in his letters to the court should be denied. Docs. 31, 32.

The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a

constitutional right, Petitioner will not be granted a certificate of appealability in this matter. <u>See</u> <u>Tiedeman v Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the § 2254 Petition filed by Petitioner is **DENIED** and **DISMISSED**, in its entirety; Doc. 1

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that the relief sought by Petitioner in his letters to the court is **DENIED**; Docs. 31, 32.

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of Appealability will be **DENIED**.


/s/  MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>10th</u> day of July, 2009.